Madeline Holdoway, Appellant, v. Eugene Choisser, Appellee.

term, 1939. Rehearing denied April 16, 1940.

Heard in this court at the October Opinion filed March 9, 1940.

ARTHUR W. SUMMERS, of Eldorado, and BAKER, LESEMANN, KAGY & WAGNER, of East St. Louis, for appellant.

WHEATLEY & COMBE, of Harrisburg, for appellee.

MR. JUSTICE DADY delivered the opinion of the court.

Plaintiff brings this appeal from a judgment for defendant entered in the circuit court of Saline county on a verdict of a jury finding defendant not guilty.

The complaint, in substance, charged that on the date of the accident, October 16, 1937, the defendant Eugene Choisser was the owner of an automobile and plaintiff was riding in said automobile as a guest without pay and with due care; that said automobile was equipped with brakes which were defective and dangerous to the safety of persons riding in said automobile; that said automobile was not equipped with brakes adequate to control the movement of and to stop and hold said automobile; that said brakes were not in good working order and were not so adjusted as to operate as equally as practicable with respect to

the wheels on opposite sides of the vehicle, as provided by statute, all of which was known to defendant but unknown to plaintiff; that the defendant wilfully and wantonly caused his agent to operate said vehicle and that the defective brakes caused a collision whereby plaintiff was wilfully and wantonly injured by the wilful and wanton conduct of defendant.

The answer of defendant specifically denied liability.

Plaintiff is a sister of defendant. At the time of the accident an automobile owned by defendant was being driven by Greek Choisser, the wife of defendant, and the only other occupants of the automobile were the plaintiff, her daughter, aged 7, and the mother of plaintiff and defendant.

Plaintiff and Greek Choisser testified for the plaintiff, but the other occupants of the automobile did not testify. All of the parties in question live in Eldorado, Illinois.

Greek Choisser testified that at the time in question she was driving to the town of Sparta to purchase a table with money given her by her husband; he knew she was going to make the trip and that plaintiff and his mother were also going, and made no objection; the day before the accident defendant told her to be careful of the car, and that the brakes were bad; he warned her twice on the morning of the accident and said the car was dangerous and for her to be careful; the weather was clear and the road dry; while driving at about 45 or 50 miles per hour the car started swerving back and forth, "sorta shimmying" across the road; she tried to keep it under control by putting on the brakes and when she put on the foot brake the car went off the pavement and turned over on its side and plaintiff was injured; she noticed no trouble in operating and handling the car at any time before the "upset" and the first difficulty she noticed was when the car began to swerve back and forth; she did not apply the brakes before it began swerving; no one in

the car made any complaint about her driving; she had driven the car at other times and until this morning she experienced no difficulty in the operation of the car.

Plaintiff testified that on the morning of the accident Greek Choisser asked plaintiff to go to Sparta, and Greek Choisser picked plaintiff up on the street; she and Greek Choisser rode in the front seat, and the mother and daughter in the rear seat; the traffic was light; the car began swerving and jerking and when Greek Choisser put on the brakes "we went over"; the front wheels quivered and shimmied; the car traveled from one side of the road to the other two or three times and when Greek Choisser slammed on the brakes the car plunged off the pavement and turned over; she paid no fare or fee for the trip; there was nothing to indicate the car was unmanageable before the accident; the car began swerving from one side to the other two or three times and zigzagged about 200 feet and then Greek Choisser applied the brakes; she found no fault with the driving; before the accident nothing unusual happened in the operation of the car and there was nothing to indicate the car was unmanageable, and the first indication she had of the car not operating right was when it began swerving.

Jack Turner, a witness for plaintiff, testified that about October 2nd defendant drove the witness from Norris city to Chicago in the car in question and the witness noticed that when defendant applied the brakes the car would swerve, go back and forth across the road, and get out of control to a certain extent; he noticed this three times on the trip of about 615 miles; on such trip the car swerved seven or eight times but was only across the road three times; they drove about 50 miles per hour.

Defendant, called as a witness by plaintiff for adverse examination, testified that on the day in question his wife told him she was going to Sparta to buy

a table and he gave her the money to purchase it; the car was a 1937 model which he had owned about five months and had driven quite often; he had some trouble with the car after he bought it; this trouble began two or three weeks after the purchase; when he went to put on the brake it would pull to the right or left; he took it back to the people he bought it from to have it corrected from pulling one way or another, and took it back to them from time to time for work on the brakes; about five or six weeks before the accident they put in new brake linings, which did not make much difference, if any, in the car's actions; if the brake was put on at 45 or 50 miles per hour the car would pull; he had had that trouble quite often; he took the car back to the dealer six or eight or nine times for brake adjustments; when it started to pull to one side it took all or almost all of his strength to hold it on the road; the day before the accident he took the car to the garage to get the brakes worked on but they told him they were busy and he did not leave the car for repairs at that time; on the morning of the accident he told his wife to watch and be careful when she threw on the brakes; that "if you don't, you are liable to have an accident"; he never told plaintiff about his car being in a dangerous condition; the car had hydraulic brakes and an emergency brake; he had driven it 14 to 15 thousand miles; the trouble he had had with the car was the brakes needing adjustment and he did not remember the car ever pulling him off the pavement by swerving.

The foregoing was all of the testimony material to a decision of this case. The plaintiff was severely injured, but it is not necessary to discuss the extent of such injuries.

The only alleged errors relied upon by plaintiff are that the trial court erred in giving instructions asked by the defendant, and in permitting counsel for defendant to examine defendant as a witness immedi-

ately after the plaintiff had concluded an adverse examination of defendant and before the plaintiff had rested her case.

To meet these alleged errors defendant first contends that plaintiff did not make out a prima facie case of liability as charged. In passing on this question we are bound to assume as true all of the evidence heretofore stated. Assuming such evidence to be true, the defendant knowingly and without any warning to plaintiff permitted her to be conveyed by his agent in his automobile which he knew was in a defective and dangerous condition by reason of defective brakes, —in such condition that if the brake was applied at 45 or 50 miles speed per hour the car would pull to such an extent as to require all of his strength to hold it on the road. If the jury believed this evidence they would have been justified in finding defendant guilty as charged.

In *Richardson v. Moore*, 254 Ill. App. 511, which was a case decided before the adoption of our guest statute, it was held that a guest in an automobile could recover from the driver for negligence of such driver in knowingly operating a car with defective brakes. One may be so grossly negligent as to be guilty of wilful and wanton misconduct. *Bremer v. Lake Erie & W. R. Co.*, 318 Ill. 11; *Nosko v. O'Donnell*, 260 Ill. App. 544.

No Illinois case based on wilful and wanton misconduct has been cited in which the facts are similar. The guest statute of Connecticut and the guest statute of our State are alike. In *Bryll v. Bryll*, 114 Conn. 668, 159 Atl. 884, the facts were analogous to the facts in the case at bar. The Connecticut court held that the jury could reasonably find that the defendant was operating his car with such a heedless and reckless disregard of the plaintiff's rights as to render him liable under the guest statute.

Having made a clear prima facie case, plaintiff was entitled to have the jury fairly instructed as to the law applicable to the case, regardless of the close relationship of the parties, and regardless of the fact that the testimony of defendant may have been unusually favorable to plaintiff. The following instructions were given at the request of the defendant.

Number 3 told the jury that "for an act to become wilful or wanton under the law it must be shown by a preponderance or greater weight of the evidence that there is a particular intention to injure or a degree of wilful or wanton recklessness which authorized a presumption of an intention to injure generally on the part of the person guilty of such an act. And under the law you have no authority to conclude that an injury was intended or that such an act on the part of the person complained against, was either wilful or wanton." This told the jury they could not conclude, that is, could not find, that the defendant intended any injury, and could not find that the act or acts of the defendant were wilful or wanton, the effect of which was to give the jury no alternative except to find defendant not guilty. The giving of this instruction was reversible error.

In numbers 5, 6 and 12, collectively, the plaintiff was referred to six times as being the sister of the defendant. The fact that the plaintiff was such sister was proper to be considered by the jury but such relationship should not have been emphasized by the court. As a matter of law, the plaintiff was entitled to the same rights as though she were a stranger.

Number 2 stated that the mere violation of the automobile law in not having an automobile with adequate brakes does not constitute a wilfulness and wantonness as charged. Number 5 stated that although the jury might believe the accident was caused by some defect in mechanism, this would not justify the

jury in finding the defendant guilty. Number 6 told the jury, among other things, that in determining whether defendant was guilty they had the right to take into consideration any instructions and warnings that defendant gave his wife as to the use and condition of the automobile. Each of these erroneously singled out certain evidence and was misleading. (*Minnis v. Friend,* 360 Ill. 328.)

Number 5 further told the jury that in determining whether defendant wilfully or wantonly injured his sister they had the right to take into consideration the fact that defendant permitted his mother, sister, wife and niece to ride in the automobile. While the jury had the right to consider these facts, the court should not have singled out and thereby emphasized such facts.

Number 9 defined an accident as an abstract proposition of law and should not have been given.

Number 12 told the jury that in determining whether the defendant was or was not guilty they had the right to consider the fact that defendant was not present at the time of the accident. Under the evidence in this case the absence of the defendant was wholly immaterial.

The question of whether it was or was not proper to permit the defendant, after adverse examination, to be interrogated by his counsel before the plaintiff had rested her case, is not necessary to be considered by us for the reason that the testimony adduced on such last examination was in no respect different from that brought out on adverse examination.

By reason of the giving of such erroneous instructions plaintiff did not have a fair trial.

The cause is reversed and remanded for a new trial.

*Reversed and remanded.*